UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CHRISTIAN ANGUEIRA,

    Petitioner,

v.                                                        CASE NO. 6:09-cv-1291-Orl-28GJK
                                                                    (6:07-cr-107-Orl-28GJK)

UNITED STATES OF AMERICA,

    Respondent.
_____

## ORDER

This case involves a motion to vacate, set aside, or correct an illegal sentence pursuant to 28 U.S.C. § 2255 (Doc. No. 1) filed by Christian Angueira. The Government filed a response (Doc. No. 8) to the section 2255 motion in compliance with this Court's instructions and with *The Rules Governing Section 2255 Proceedings for the United States District Courts*. Petitioner filed a reply to the Government's response (Doc. No. 9).

Petitioner alleges three claims for relief: (1) counsel rendered ineffective assistance by failing to file a motion to dismiss the indictment; (2) counsel rendered ineffective assistance by representing Petitioner in light of a conflict of interest; and (3) outrageous Government conduct violated Petitioner's Fifth and Sixth Amendment rights. For the following reasons, Petitioner's § 2255 motion is denied.

I.    *Procedural History*

Petitioner was charged by indictment on July 12, 2007, with conspiring to possess with intent to distribute and distributing five or more kilograms of cocaine hydrochloride

(Criminal Case No. 6:07-cr-107-Orl-28GJK, Doc. No. 200).[1] Petitioner was arrested on December 5, 2007, and was arraigned the following day. *Id.* at Doc. No. 705. On February 27, 2008, Petitioner entered a plea of guilty as charged before Magistrate Judge Gregory J. Kelly. *Id.* at Doc. No. 930. Magistrate Judge Kelly filed a Report and Recommendation, recommending that the plea be accepted and that Petitioner be adjudicated guilty. *Id.* at Doc. No. 933. This Court accepted the plea and adjudicated Petitioner guilty. *Id.* at Doc. No. 1174. The Court sentenced Petitioner to a 122-month term of imprisonment to be followed by five years of supervised release. *Id.* at Doc. No. 1176. Petitioner did not appeal his conviction or sentence.

## II. Legal Standard

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense. *Id.* at 687-88. The prejudice requirement of the *Strickland* inquiry is modified when the claim is a challenge to a guilty plea based on ineffective assistance. *See Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). To satisfy the prejudice requirement in such claims, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

---

[1] Criminal Case No. 6:07-cr-107-Orl-28GJK will be referred to as "Criminal Case."

A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

III. *Analysis*

　A.　*Claim One*

Petitioner asserts that counsel rendered ineffective assistance by failing to file a motion to dismiss the indictment. In support of this claim, Petitioner argues that trial counsel completed a motion to dismiss the indictment pursuant to Federal Rule of Criminal

3

Procedure 12(b)(2), but before counsel filed the motion, the Government disclosed to counsel a DEA investigative report containing incriminating evidence against one of counsel's colleagues.[2] (Doc. No. 9 at 2.) Petitioner contends that defense counsel decided at that time not to file the motion to dismiss, which would have been successful. *Id.* Petitioner maintains that he told counsel to file the motion, counsel advised Petitioner that he had done so, but Petitioner subsequently discovered that the motion had not been filed when counsel pressured Petitioner not to file the motion and instead to enter a plea because counsel was concerned about the incriminating evidence held by the Government regarding one of his colleagues. *Id.* at 3-4, 15-16.

In response to Petitioner's motion, the Government filed the affidavit of Michael Dicembre ("Dicembre") and Mark Blechman ("Blechman"), Petitioner's trial counsel. (Doc. No. 5-2.) Dicembre and Blechman attested that they discovered from Petitioner that Jaime Reyes ("Reyes"),[3] who was believed to be an active informant for law enforcement, had held himself out to be an attorney to Petitioner and attempted to convince Petitioner to hire

---

[2]The Court notes that Petitioner had two attorneys, Michael Dicembre and Mark Blechman. Petitioner does not indicate that both of his attorneys were friends with the attorney who was implicated in the DEA investigative report. *See* Doc. No. 9 at 2-4. Instead, initially when discussing his claim that counsel pressured him into entering a plea, Petitioner refers to only one attorney. *See id* at 4 (stating "It is important to note that intentionally, Defendant was lied to by his counsel, telling Defendnat [sic] that he did in fact [sic] file the rule 12(b) motion to the Court."). Subsequently, Petitioner indicates that Dicembre was the attorney who was friends with the attorney implicated in the DEA investigative report. (Doc. No. 9 at 13.)

[3]According to the proposed motion to dismiss submitted by Petitioner with his § 2255 motion, Reyes was associated with the law offices of Charles Trulock. (Doc. No. 1-2 at 4.)

4

him. (Doc. No. 5-2 at 2.) Dicembre and Blechman indicated that Petitioner believed that Reyes provided the Government with information obtained from Petitioner as a result of Reyes' actions. *Id.* Dicembre and Blechman stated that they prepared a motion to dismiss the indictment pursuant to the Fifth and Sixth Amendments based on outrageous Government conduct and intrusion on the attorney-client privilege. *Id.*

According to Dicembre and Blechman, they met with Petitioner to discuss the motion to dismiss on February 20, 2008; thereafter, at a status conference on February 22, 2009,[4] they gave the motion to dismiss to Assistant United States Attorney Bruce Ambrose, but they did not file it with the Court. *Id.* at 3. Dicembre and Blechman attested that the Government advised them that if Petitioner pursued the motion, the Government would not support an acceptance of responsibility reduction and it would not offer a substantial assistance reduction. *Id.* Dicembre and Blechman indicated that they met with Petitioner on February 24, 2008, to discuss the Government's reaction to the motion, and after extensive discussion, Petitioner decided to enter a plea and forego filing the motion to dismiss. *Id.* Dicembre and Blechman attested that they told Petitioner that the only way to raise the issue of Reyes was by filing the motion to dismiss and that by agreeing to enter a plea, Petitioner would be giving up his opportunity to raise the issues set forth in the motion to dismiss. *Id.* at 4. Dicembre and Blechman maintained that they did not pressure or coerce Petitioner to enter a plea but did advise him of the potential consequences he

---

[4]The affidavit indicated that the status conference was in 2009. The record reflects, however, that the status conference was actually on February 22, 2008.

might face if he did not enter a plea, and Petitioner chose to pursue the plea. *Id.* Finally, Dicembre and Blechman attested that they met with Petitioner again on February 26, 2008, to discuss the plea and the impact entering the plea would have on his right to proceed on the motion to dismiss, and Petitioner agreed to enter the plea. *Id.* Thus, Dicembre and Blechman refute Petitioner's contention that they pressured him to enter a plea because the Government had incriminating evidence against one of their colleagues.

The Eleventh Circuit Court of Appeals has held "a district court ordinarily should not resolve a disputed factual issue in a habeas proceeding based solely on an affidavit." *Alvarez-Sanchez v. United States,* 350 F. App'x 421, 424 (11th Cir. 2009). However, "[w]here the affidavits are supported by other evidence in the record the court may rely upon them." *Owens v. United States,* 551 F.2d 1053, 1054 (5th Cir. 1977).[5]

In the instant case, trial counsels' representations in the affidavit are supported by Petitioner's own representations to the Court during the plea hearing. During the plea hearing, the following colloquy occurred:

> The Court: Okay. Well, with that having been addressed, *Mr. Angueira, has anyone done anything that you believe is improper in order to induce you to enter a plea of guilty with respect to Count One of the Indictment?*
>
> The Interpreter: *No, sir.*
>
> The Court: *Has there been any type of threats, coercion or intimidation of any form whatsoever that has led you to want to enter a guilty plea with*

---

[5]In *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit Court of Appeals rendered prior to October 1, 1981.

*respect to Count One of the Indictment?*

The Interpreter: *No, Sir.*

* * *

The Court: Mr. Angueira, you understand that you're not required to plead guilty with respect to the charge against you, correct?

The Interpreter: Yes, sir.

* * *

The Court: *You'd give up all defenses that you have with respect to the charge; do you understand that?*

The Interpreter: *Yes, sir.*

* * *

The Court: *Okay. Mr. Angueira, based on the evidence - - well, let me just ask you, are you deciding to plead guilty because you are guilty or is there some other reason why you want to plead guilty?*

The Interpreter: *No. No, there is no other reason.*

The Court: Okay. So you're deciding to plead guilty because you are guilty?

The Interpreter: Yes, sir.

The Court: Mr. Angueira, based on the evidence presented, I find that there is a factual basis for you to enter a guilty plea. Even though I've found that there is a factual basis for you to enter a guilty plea and that you're competent, you understand that you're not required to plead guilty, correct?

The Interpreter: Yes, sir.

The Court: Mr. Angueira, having heard the explanation of the consequences of a guilty plea and the effect that plea would

7

have on your rights, do you still desire to enter a guilty plea with respect to Count One of the Indictment?

The Interpreter: Yes, sir.

The Court: *Is there anything that you want to ask me or tell me or discuss with your counsel that would bear on your decision in terms of whether or not to enter a guilty plea with respect to Count One of the Indictment?*

The Interpreter: *No, sir.*

The Court: *Do you have any questions whatsoever about the proceedings here today?*

The Interpreter: *No, sir.*

The Court: *Okay. Do you have any desire to change, modify or clarify your testimony here today in any respect, sir?*

The Interpreter: *No, sir.*

The Court: Do you want to further consult with your attorneys one last time before I ask you how you plead?

The Interpreter: Yes, sir.

The Court: Okay. If you want to take an opportunity to confer [sic] your counsel, please do.

(Discussion held off the record.)

The Interpreter: Well, yes.

The Court: *Do you have any questions that you would like to address at this point in time?*

The Interpreter: *No.*

\* \* \*

The Court: Once again, at any point in time during the proceedings here

8

>  today have you had difficulty understanding what's being said?
>
> The Interpreter:   No, sir.
>
> The Court:   Okay. Mr. Angueira, how do you plead with respect to Count one of the Indictment?
>
> The Interpreter:   Guilty.

Criminal Case Doc. No. 1352 at 11, 20, 23, 32-34 (emphasis added). Thus, contrary to Petitioner's assertions in his Section 2255 motion, when asked at the plea hearing if anyone had done anything improper or coerced him in any way to get him to enter a plea, Petitioner responded negatively. Moreover, Petitioner told the Court that he understood that by entering the plea, he was waiving any defenses to the charge. Despite being provided numerous opportunities to notify the Court that counsel had pressured him to enter the plea or forced him to forego filing the motion to dismiss, Petitioner never did so, and in fact, indicated that the only reason he was entering a plea was because he was guilty. Petitioner's representations constitute "a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Given Petitioner's representations to the Court during the plea hearing and trial counsels' representations in the affidavit, the Court concludes that Petitioner has failed to demonstrate either deficient performance or prejudice pursuant to *Strickland*. Accordingly, claim one is denied.

B.   *Claim Two*

Petitioner contends trial counsel rendered ineffective assistance by failing "to place

9

the question before the Court as to whether a conflict of interest may exist, in that, counsel was representing a client who was a government informant and had provided damaging evidence to [the] government against [Petitioner].'"[6] (Doc. No. 1 at 4.) In support of this claim, Petitioner relies on the allegations raised in the motion to dismiss, discussed *supra*, which was not filed with the Court. *See* Doc. No. 9 at 4-10.

Additionally, it appears that Petitioner contends that trial counsel rendered ineffective assistance based on a conflict of interest arising from the Government's disclosure of a DEA investigative report to trial counsel which contained incriminating evidence against one of Dicembre's friends and colleagues. *Id.* at 10-11, 13-14. Petitioner maintains that counsel pressured him to enter a plea after Dicembre received the DEA investigative report implicating his friend. *Id.* at 13. To demonstrate an actual conflict, Petitioner argues that Dicembre had a very close relationship with the attorney named in the DEA investigative report as evidenced by the fact that (1) Dicembre and the other attorney filed documents in 2003 with the State of Florida which listed the same mailing address for their businesses, and (2) the attorney who was implicated in the DEA investigative report referred Petitioner to Dicembre.[7] (Doc. No. 9 at 14-15.)

"Where an ineffective assistance claim is based on a conflict of interest, 'a defendant

---

[6]Petitioner is referring to his interaction with Reyes, who Petitioner contends was either acting as counsel or associated with Charles Trulock's law office.

[7]The Court notes that although the documents filed in 2003 indicate that Dicembre and the other attorney used the same address on the documents, at the time of Petitioner's plea in 2008, Dicembre's law office was located at a different address than that listed in the 2003 documents. *See* Doc. No. 1-2 at 8.

must show first, that his attorney had an actual conflict of interest, and second, that the conflict adversely affected counsel's performance.'" *McCorkle v. United States*, 325 F. App'x 804, 808 (11th Cir. 2009) (quoting *Pegg v. United States*, 253 F.3d 1274, 1277 (11th Cir. 2001)) (emphasis omitted); *see also Mickens v. Taylor*, 535 U.S. 162, 172 n. 5 (2002) ("An 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance."). "'An 'actual conflict' of interest occurs when a lawyer has 'inconsistent interests.'"" *McCorkle*, 325 F. App'x at 808 (quoting *Freund v. Butterworth*, 165 F.3d 839, 859 (11th Cir. 1999)). "The conflict cannot be merely possible, speculative, or hypothetical." *Id.* (citing *Reynolds v. Chapman*, 253 F.3d 1337, 1342 (11th Cir. 2001)).

To distinguish between an actual and a possible conflict of interest, courts "'will not find an actual conflict of interest unless [the defendant] can point to specific instances in the record to suggest an actual conflict or impairment of [his] interests.'" *Id. (quoting Reynolds*, 253 F.3d at 1343). Thus, to establish the first part of the test, a defendant

> "must make a factual showing of inconsistent interests and must demonstrate that the attorney made a choice between possible alternative causes of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to [himself]. If he did not make such a choice, the conflict remain(s) hypothetical."

*Id.* (quoting *Reynolds*, 253 F.3d at 1343).

As to the second part of the test, to prove an "'adverse effect, a defendant needs to demonstrate: (a) that the defense attorney could have pursued a plausible alternative strategy, (b) that this alternative strategy was reasonable, and (c) that the alternative strategy was not followed because it conflicted with the attorney's external loyalties.'" *Id.*

(*Reynolds*, 253 F.3d at 1343).

In the instant case, the Court concludes that Petitioner has not demonstrated that an actual conflict of interest existed or that what Petitioner describes as a conflict had an adverse effect on counsels' performance. As an initial matter, the Court notes that Petitioner's first claim of conflict of interest related to his pre-arrest interaction with Reyes which did not result in an actual conflict or an adverse effect on trial counsels' performance. Petitioner was represented by two attorneys, Dicembre and Blechman, who were not associated with Reyes or Charles Trulock's office. Thus, any potential conflict of interest resulting from Petitioner's interaction with Reyes could not have adversely affected Dicembre and Blechman's representation of Petitioner during his criminal proceedings. Plus, any alleged conflict was not Dicembre or Blechman's conflict.

Turning to Petitioner's contention that a conflict of interest existed based on the DEA investigative report, the Court finds that Petitioner has not demonstrated an actual conflict or an adverse effect on counsels' performance. First, even assuming that Dicembre was close friends with the attorney implicated in the DEA investigative report, Petitioner has not alleged that Dicembre's co-counsel, Blechman, was similarly conflicted. As noted previously, both Dicembre and Blechman attested that they did not pressure or coerce Petitioner to enter a plea but did advise him of the potential consequences he may face if he did not enter a plea, and Petitioner chose to pursue the plea and forego filing the motion to dismiss. (Doc. No. 5-2.) As such, Petitioner cannot establish that the failure to file the motion to dismiss occurred because of a conflict with Blechman's external loyalties. In

other words, even assuming that Dicembre did not file the motion to dismiss because of his relationship with the attorney implicated in the DEA investigative report, Petitioner has not disputed Blechman's representations as to why the motion to dismiss was not filed.

Moreover, Petitioner has not shown that Dicembre's friendship or relationship with the attorney implicated in the DEA investigative report resulted in an inconsistent interest with Petitioner's case or that Dicembre made a choice not to file the motion to dismiss based on his relationship with the other attorney. It is not clear why Petitioner draws the conclusion that Dicembre and Blechman did not file the motion to dismiss simply because the Government gave Dicembre the DEA investigative report implicating another attorney. Petitioner speculates that Dicembre wanted to protect his friend at Petitioner's expense and that the Government attempted to intimidate Dicembre with the DEA investigative report. However, there is no indication, much less evidence, that Dicembre could have prevented the Government from taking further action against his friend by not filing the motion to dismiss or that the Government agreed not to pursue Dicembre's friend if the motion to dismiss was not filed. Further, it strains credulity to suggest that the Government would have dropped a criminal investigation of a prominent criminal defense attorney based solely on the events involving Petitioner. In sum, Petitioner's claim of conflict is purely speculative and hypothetical. As such, Petitioner has not demonstrated that he received ineffective assistance of counsel, and claim two is denied.

C.  Claim Three

Petitioner contends that outrageous Government conduct violated his Fifth and Sixth Amendment rights. In support of claim three, Petitioner relies on his pre-arrest

13

interaction with Reyes as discussed in relation to claim one. In short, Petitioner is attempting to argue the merits of the motion to dismiss.

"[A] defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding. This rule generally applies to all claims, including constitutional claims." *Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir. 2004) (citations omitted); *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994). However, a defendant can avoid the procedural bar by demonstrating the applicability of one of the two exceptions: (a) cause and prejudice for the failure to raise the claim on direct appeal or (b) "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Mills*, 36 F.3d at 1055.

"Ineffective assistance of counsel may constitute cause to excuse procedural default." *DiPietro v. United States*, 251 Fed. Appx. 606, 608 (11th Cir. 2007) (citing *Eagle v. Linahan*, 279 F.3d 926, 937 (11th Cir. 2001)). "[T]o do so, however, the claim of ineffective assistance must have merit." *United State v. Nyhuis* 211 F.3d 1340, 1344 (11th Cir. 2000) (citing *Greene v. United States*, 880 F.2d 1299, 1305 (11th Cir. 1989)).

In the instant case, Petitioner argues that trial counsels' ineffective assistance resulting from a conflict of interest establishes cause and prejudice to overcome the procedural default bar. However, as discussed *supra* in claim two, the Court has determined that Petitioner has not demonstrated an actual conflict or an adverse effect on counsels' performance. As such, Petitioner's claim of ineffective assistance of counsel is without merit and cannot overcome the procedural default bar. Accordingly, claim three

is not cognizable.

## IV. Petitioner's Request to Supplement

On December 19, 2009, pursuant to the mailbox rule, Petitioner filed documents, indicating that he was seeking leave to supplement his Reply. *See* Doc. Nos. 10 & 11. Review of the documents indicates that Petitioner is seeking to supplement his conflict of interest claim (claim two) to raise two additional arguments concerning why Dicembre rendered ineffective assistance based on a conflict. Thus, Petitioner is effectively seeking to amend his Section 2255 motion.

In relevant part, Section 2255 requires the petitioner to file a motion to vacate, set aside, or correct an illegal sentence within one year from the date the judgment of conviction becomes final. 28 U.S.C. § 2255(1). Claims raised in a motion to amend a Section 2255 motion must likewise be filed within the one-year period. *See Farris v. United States*, 333 F. 3d 1211, 1215 (11th Cir. 2003).

Under the time limitation set forth in Section 2255(1), Petitioner had one year from when his conviction became final to file a Section 2255 motion. Petitioner's Judgment of Conviction was entered on July 17, 2008, and he did not timely file a direct appeal. Therefore, his conviction became final on July 27, 2008, when the time for filing an appeal expired. *See Mederos v. United States*, 218 F.3d 1252, 1253 (11th Cir. 2000) (a conviction which is not appealed becomes final when the time allowed for filing an appeal expires). Thus, Petitioner had through July 27, 2009, to file his Section 2255 motion. Petitioner initiated the instant action on July 21, 2009, under the mailbox rule. *Adams v. United States*, 173 F.3d 1339, 1341 (11th Cir. 1999) (*pro se* prisoner's Section 2255 motion is deemed filed

the date that it is delivered to prison authorities for mailing). As such, Petitioner's Section 2255 motion was timely filed. However, Petitioner filed the requests to supplement on December 19, 2009. Therefore, the supplements to claim two raised in the construed motions to amend are untimely unless they relate back to the original motion. *See Farris*, 333 F. 3d at 1215.

Federal Rule of Civil Procedure 15(c) "dictates that an amendment only relates back to the original pleading and causes an otherwise untimely claim to be considered timely when, . . . 'the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.'" *Id.* (quoting Fed. R. Civ. P. 15(c)(2)). The Eleventh Circuit has concluded that

> to relate back, an untimely claim must have more in common with the timely filed claim than the mere fact that they arose out of the same trial or sentencing proceeding. The untimely filed claim must have arisen from the "same set of facts" as the timely filed claim, not from separate conduct or a separate occurrence in "both time and type."

*Farris*, 333 F.3d at 1215.

Petitioner initially asserted three claims of ineffective assistance of counsel. His second claim of ineffective assistance of counsel alleged that counsel "failed to place the question before the Court as to whether a conflict of interest may exist, in that, counsel was representing a client who was a government informant and had provided damaging evidence to government [sic] against defendant. There was, in fact, a conflict of interest in the case at bar, of which, was known by the Defendant's counsel prior to the entry of guilty plea." (Doc. No. 1 at 4.)

In his request to supplement, Petitioner seeks to supplement claim two with the

following allegations: (1) a conflict of interest arose in Petitioner's case based on Dicembre's representation of Tariq Taji ("Taji") in a state criminal proceeding, and (2) a conflict of interest arose in Petitioner's case based on Dicembre's representation of Rafael Batista ("Batista") in an unrelated federal case. Upon review of the initial Section 2255 motion and the proposed supplements to claim two, the Court concludes that the supplements clearly arise from separate conduct and separate occurrences than the conduct originally at issue in claim two. *See, e.g., Farris*, 333 F.3d at 1215-16 (concluding *inter alia* that a claim based on *Apprendi*[8] asserting error because the quantity of drugs was not found by the jury beyond a reasonable doubt did not arise from the same set of facts as the petitioner's timely claim that counsel was ineffective for failing to advise him about his sentencing exposure). Thus, Petitioner's request to supplement is denied.[9]

---

[8]*Apprendi v. New Jersey*, 530 U.S. 466 (2000).

[9]Alternatively, the Court has reviewed Petitioner's contentions and concludes that he has failed to demonstrate an actual conflict of interest or an adverse effect on counsels' performance resulting from Dicembre's representation of Taji and Batista. First, neither Taji nor Batista were co-defendants or witnesses against Petitioner. From the documents submitted by Petitioner, it appears that Dicembre entered a notice of appearance on February 23, 2006, in an unrelated state case in which Taji was charged with violation of probation ("VOP"). (Doc. No. 10-2 at 9.) Thereafter, on November 2, 2006, a public defender represented Taji on the VOP charge. Taji subsequently entered a plea on the VOP charge on November 8, 2007, prior to Dicembre's representation of Petitioner in this case. *Id.* at 12, 15. Dicembre began representing Petitioner in January 2008, and Petitioner entered his plea in February 2008. (Doc. No. 11 at 3.) Dicembre later represented Taji beginning in May 2009 on a second VOP charge in the same state case. (Doc. No. 10-2 at 17.) Thus, to the extent Petitioner is attempting to argue that Dicembre, as Taji's VOP counsel, prevented the Government from filing an indictment against Taji as a co-conspirator in Petitioner's case in return for Dicembre not filing the motion to dismiss in Petitioner's case, the documents indicate that Dicembre was not representing Taji at any time during the time he represented Petitioner. Furthermore, such a claim is completely speculative and hypothetical.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Petitioner's motion to vacate, set aside, or correct an illegal sentence pursuant to 28 U.S.C. § 2255 (Doc. No. 1) is **DENIED**.

2. The Clerk of the Court shall enter judgment accordingly and is directed to close this case.

3. Petitioner's Motion to Call the Case (Doc. No. 15) is **DENIED**.

4. The Clerk of the Court is directed to file a copy of this Order in criminal case number 6:07-cr-107-Orl-28GJK and to terminate the amended motion to vacate, set aside, or correct an illegal sentence pursuant to 28 U.S.C. § 2255 (Criminal Case Doc. No. 1351) pending in that case.

5. This Court should grant an application for certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28

---

It is not clear to whom Petitioner is referring when he mentions Rafael Batista. To the extent Petitioner is referring to Kervin Batista, the record reflects that Kervin Batista was represented by Dicembre on an unrelated federal case. (Criminal Case Doc. No. 1283 at 51-56.) Kervin Batista testified at the sentencing hearing of one of Petitioner's co-defendants, Adolpho Cepero ("Cepero"). *Id.* at 51-75. Kervin Batista indicated that Cepero, with whom Batista had been incarcerated briefly, offered to falsely tell the prosecutor, in return for money, that Batista was present when another inmate confessed to murder in order for Batista to get substantial assistance. *Id.* Batista did not offer any testimony concerning the offenses at issue in Petitioner's criminal case or any testimony against Petitioner. The Court is unable to discern how Batista's testimony against one of Petitioner's co-defendants at his sentencing hearing on December 3, 2008, that was unrelated to the offenses at issue in Petitioner's case could have adversely effected Dicembre's performance in Petitioner's case. As such, the Court concludes that this claim of conflict of interest is speculative and hypothetical.

U.S.C. § 2253(c)(2). Petitioner has failed to make a substantial showing of the denial of a constitutional right.[10] Accordingly, a Certificate of Appealability is DENIED in this case.

DONE AND ORDERED in Orlando, Florida, this 30 day of May, 2011.

JOHN ANTOON II
UNITED STATES DISTRICT JUDGE

Copies to:
OrlP-1 5/24
Christian Angueira
Counsel of Record

---

[10]Pursuant to the *Rules Governing Section 2255 Proceedings for the United States District Court*, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2255 Proceedings, Rule 11, 28 U.S.C. foll. § 2255.